IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 03-03011-CR-3-S-MDH |
| ALONZO F. ELLERMAN, | |
| Defendant. | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S PRO SE REQUEST TO REDUCE SENTENCE
PURSUANT 18 U.S.C. §3582(c)(1)(A)(i) – COMPASSIONATE RELEASE**

The United States of America, through Timothy Garrison, United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to the defendant's motion for compassionate release pursuant to critical medical necessity. Specifically, the defendant, who received a sentence of 360 months for conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, as well as for being a felon in possession of a firearm, now seeks to have his sentences reduced to time served, or to home confinement, based upon extraordinary and compelling reasons. The defendant asserts that as a 59 year old with asthma, hypertension, and with neck and spinal pain issues, coronavirus (COVID-19) places him at risk if the defendant remains in the custody of the Bureau of Prisons (BOP). Because the defendant has not demonstrated extraordinary and compelling reasons justifying a reduction, and further because the defendant poses continued danger to community, the Government opposes the request and asks the Court to deny the defendant's motion.

## I. Procedural History

On January 23, 2003, the Grand Jury by indictment charged the defendant, with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) as well as with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Crim. DCD 1.) On November 5, 2003, the defendant was convicted after a three-day jury trial of both counts in the indictment under which he was charged. (Crim. DCD 155.) On March 5, 2004, the Court sentenced the defendant to 360 months on Count One, which was the conspiracy charge, and 120 months on Count Two, which was the firearms charge, in the United States Bureau of Prisons, with the sentences to be run concurrently. (Crim. DCD 205.) Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant is 59 years old and is incarcerated at the Leavenworth-USP, with a projected release date of March 28, 2029. (*See* https://www.bop.gov/inmateloc/.)

The defendant has indicated that he filed a request with the warden at Leavenworth-USP for compassionate release. The Government has not been able to confirm if the warden at Leavenworth has denied the request. As of September 17, 2020, 12:00 p.m., Central Standard Time, there are 167 active cases of COVID-19 at Leavenworth-USP within the inmate population and five active cases with staff, and 59 inmates and five staff have recovered from the virus, with no deaths of either staff or inmates. *See* https://www.bop.gov/coronavirus/.

## II. First Step Act and Compassionate Release

The First Step Act, effective December 21, 2018, provides inmates the ability to file a motion for compassionate release, an ability previously only vested in the United States Bureau of

Prisons (BOP).  Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g).  (U.S.S.G. § 1B1.13(2).)  The pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP.  (§1B1.13 Commentary n.1(D).)

The statute, 18 U.S.C. §3582(c)(1)(A), originally permitted judicial relief only upon a motion by the Director of the BOP.  Section 603(b) of the First Step Act now permits courts to act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

### A.  Administrative Remedy

As the proponent of a motion, the inmate bears the burden of proving both that they have satisfied the procedural prerequisites for judicial review—*i.e.*, that they have "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion.  18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive

access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

Here the defendant has asserted that he has exhausted his administrative rights. The Government in this case will concede that the defendant has exhausted his administrative claims. Regardless, the defendant should not be released because he has not alleged extraordinary and compelling reasons for his compassionate release and further he remains a danger to the community.

## B.  The Defendant has not Identified Extraordinary and Compelling Reasons

The Sentencing Commission's pertinent policy statement related to extraordinary or compelling reasons appears at U.S.S.G. § 1B1.13. As amended November 1, 2018, the statement repeats the text of 18 U.S.C. § 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. Courts have frequently upheld the BOP's discretionary authority in its management duties over federal prisoners. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs].").

### Medical Condition of the defendant

The application notes for U.S.S.G. 1B1.13 define medical condition of the defendant as:

Medical Condition of the Defendant.--

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is--

      (I) suffering from a serious physical or medical condition,

      (II) suffering from a serious functional or cognitive impairment, or

      (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(U.S.S.G. § 1B1.13 Application Note 1(A).)

In this case, the defendant expresses concern for his health related to the coronavirus pandemic, because his BOP facility does not comply with CDC social distancing guidelines, the large number of cases at Leavenworth-USP and further because guards and inmates refuse to wear masks. The defendant asserts the following medical conditions: asthma, hypertension, and various neck and spinal fusion procedures that cause chronic pain. These assertions are supported by the defendant's 232 pages of BOP medical records, available upon the request of the Court. The same records, however, indicate that the defendant's various aliments are being adequately treated by the BOP. The BOP medical records do not show any compelling medical reasons for release.

The defendant has not established that his condition is so extraordinary or compelling that he should be immediately released. The defendant is 59 years old, is in relatively good health apart from the aliments listed above. Currently, according to the BOP, there are 167 active COVID-19 infected inmates at Leavenworth-USP, with zero inmate and staff deaths. See

https://www.bop.gov/coronavirus/. The defendant's moderate asthma and chronic pain, coupled with the fact that no inmates have died at Leavenworth from COVID-19 supports a denial of the defendant's compassionate release motion. *See United States v. Falls*, 14-CR-74 CJW-MAR, 2020 WL 4193271, at *6 (N.D. Iowa July 21, 2020) ("[the defendant] is only 39 years old. . . . Defendant's only two conditions which raise his susceptibility to COVID-19, COPD and asthma, are moderate and well-controlled. . . . Moreover, FCI Danbury currently has no active cases of COVID-19, although one inmate has died and a significant number of inmates and staff persons have recovered.")

The medical care received by the defendant at Leavenworth is a testament to the commitment by the BOP to provide good medical care and the ability of the BOP to properly segregate and treat persons infected with COVID-19. The defendant's motion does not address the measures that the BOP is undertaking to prevent the spread of the virus. The medical concerns the defendant alleges will remain concerns if released from custody. Although our nation is in the midst of a national crisis requiring extraordinary measures, § 3582 contemplates compassionate release, not the widespread release of inmates serving lawfully-imposed sentences. *See United States v. Qazi*, Crim. A. No. 16-20437, 2020 WL 2526118, at *2-3 (E.D. Mich. May 18, 2020) (denying compassionate release for 49-year-old inmate with diabetes, hyperlipidemia, hepatitis B, and sleep apnea, finding threat of COVID-19 to be too speculative).

The defendant is not claiming that he is suffering from a terminal illness or serious physical or medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(i), (ii). Even when a prisoner is suffering from an illness,

a reduction in sentence due to a medical condition is a rare event. *See United States v. Mitchell*, No. 5:10-CR-50067-001, 2020 WL 544703, at *3 (W.D. Ark. Feb. 3, 2020).

Concerns about potential exposure to COVID-19 are not sufficient to justify compassionate release. *See United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13."); *see also United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (quoting *Eberhart*); *United States v. Zywotko*, No. 219CR113FTM60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (same). Having been diagnosed with COVID-19 and then recovering in BOP custody does not automatically require release. *United States v. Antonio Clemons*, 4:18CR610 HEA, 2020 WL 4284553, at *2 (E.D. Mo. July 27, 2020)(Even though the defendant had COVID-19 while in BOP custody, he had recovered and the records provided show that defendant received full and competent medical care with BOP.)

The Government is attune to the difficulties facing inmates, however, this particular instance simply fails to meet the requirements of the law and policy. In *Dillon v. United States*, 560 U.S. 817, 826, (2010) the Supreme Court determined that the sentencing court could only consider a reduction in sentencing if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Based on that reasoning, U.S.S.G. § 1B1.13 is mandatory and the defendant's request does not meet the requirements for release.

**Age of the defendant**

The application notes for U.S.S.G. 1B1.13 define age of the defendant as:

Age of the Defendant.--

7

The defendant --

    (i) is at least 65 years old;

    (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(U.S.S.G. § 1B1.13 Application Note 1(B).)

In this case, the defendant is 59 years of age and has made no showing he has suffered a serious deterioration in his physical or mental health because of the aging process. The defendant has made an inadequate showing of extraordinary and compelling circumstances. There is no evidence or claim that he is unable to provide self-care or perform daily living activities due to his age. The defendant has failed to sustain his burden to prove that he meets the requirements for compassionate release or a reduction of sentence. The defendant also fails to demonstrate how his age places him at an increased risk should the defendant contract the coronavirus. Once again, the defendant's circumstance is not extraordinary in the context that many individual across the nation are in the same or similar position as the defendant, and the defendant's age remains the same whether he is released.

**Family Circumstances**

The application notes for U.S.S.G. 1B1.13 define family circumstances as:

    Family Circumstances.--

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(U.S.S.G. § 1B1.13 Application Note 1(C).)

The defendant makes no assertion that family circumstances require him to be home. Consequently, he cannot meet the existence of family circumstances as a critical necessity requiring compassionate release.as set forth in Commission's policy statement.

**Other Reasons**

The application notes for U.S.S.G. 1B1.13 define other reasons as:

Other Reasons.--

> As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

(U.S.S.G. § 1B1.13 Application Note 1(D).)

Here, the defendant suggests that early release is warranted due to the numerous education programs in which he has participated while in BOP and because he has a viable home plan. The defendant also states that he has had no disciplinary actions for the past 18 years in the BOP. The defendant also suggests that if he were sentenced today, it would be a significantly lower sentence because of subsequent changes in the sentencing guidelines. However, these are not extraordinary and compelling reasons for release.

**BOP efforts regarding COVID-19**

Additionally, the defendant's motion, does not address the measures that the BOP is undertaking to prevent the spread of the virus. The BOP has taken significant measures to protect the health of all inmates. The BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO). On March 13, 2010, the BOP announced that it was implementing the Coronavirus (COVID 19) Phase II Action Plan in order

9

to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises many preventive and mitigation measures, including the following:

- Screening of Inmates and Staff: All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility).

- Quarantine Logistics: All BOP institutions establish quarantine areas within their facilities to house any inmates found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

- Suspension of Social Visits and Tours: The BOP placed a 30-day hold on all social visits and tours.

- Suspension of Legal Visits: The BOP placed a 30-day hold on legal visits, with exceptions permitted on a case-by-case basis.

- Suspension of Inmate Movements: The BOP ceased the movement of inmates amongst its facilities for at least 30 days, with exceptions for medical treatment and other exigencies.

- Modified Operations: BOP facilities modified operations in order to maximize social distancing.

On March 18, 2020, the BOP implemented Phase III of the Action Plan maximizing telework for locations that perform administrative services. All cleaning, sanitation, and medical supplies were inventoried, and sufficient supplies were on hand and ready to be distributed to

facilities as necessary. The BOP placed additional orders for supplies, in case of a protracted event. See https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (phases I-III).

Phase IV of the Action Plan was implemented on March 26, 2020. The BOP revised and updated its quarantine and isolation procedures to require all newly admitted inmates, whether in a sustained community transition area or not, be assessed using a screening tool and temperature check. Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

On April 1, 2020, in response to a growing number of quarantine and isolation cases, the BOP implemented Phase V and directed the following actions be taken immediately to further mitigate the exposure and spread of COVID-19:

- For a 14-day period, inmates in every institution be secured in their cells/quarters to decrease the spread of the virus.

- During this time, to the extent practicable, inmates should still have access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.

- The BOP is to coordinate with the United States Marshals Service to significantly decrease incoming movement during this time.

- After 14 days, this decision will be reevaluated.

- Limited group gathering will be afforded to the extent practical to facilitate, commissary, laundry, showers, telephone, and Trust Fund Limited Inmate Computer System (TRULINCS) access.

See https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (phases IV-V).

Phase VI, implemented on April 13, 2020, extends all Phase V measures until May 18, 2020. https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf. Further details regarding the BOP's COVID-19 action plan and efforts are available at https://www.bop.gov/resources/news/20200313_covid-19.jsp and at a daily updated resource page: https://www.bop.gov/coronavirus/index.jsp.

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution. BOP professionals continue to monitor this situation and adjust practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately, inmates have nevertheless become ill, and more likely will in the weeks ahead. Nevertheless, the solution is not to exclude BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this pandemic, and the BOP should have the opportunity to assess those factors during the statutorily required review period. For example, notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live

and access to health care in these difficult times.  Moreover, it must consider myriad other factors, including the availability of transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced if any service), and of supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, the BOP is exercising greater authority to designate inmates for home confinement.  On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement.  That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).  Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note.)   On April 3, 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidents of coronavirus transmission.

Even though the Government has asked the Court to dismiss the defendant's request, the Government is sensitive to the issues the defendant raises related to the coronavirus pandemic. The Government does not minimize the concern or the risk to inmates such as the defendant. At the present time, the BOP has taken aggressive action to mitigate the danger for all inmates.

### C.  Defendant Remains a Danger to the Community

This Court may not reduce the defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13. This defendant is a danger to the community, and should not be considered for compassionate release.

Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that this defendant is not a danger to the safety of any other person or the community.

The nature and circumstances of the charges offense, § 3142(g)(1), and the weight of the evidence, § 3142(g)(2), in the instant case demonstrate that the defendant should not receive early release.  The defendant was involving in a large-scale conspiracy to distribute methamphetamine. The evidence was strong against the defendant was reflected by his conviction after a jury trial. Additionally, the defendant has an extensive and criminal history that includes multiple

14

convictions for burglary, a conviction for Second Degree Assault, and Possession of a Controlled Substance. (Crim. DCD 211, ¶¶ 80-85.)

Nothing about the COVID-19 pandemic reduces the defendant's danger to others. The defendant has failed to demonstrate that the § 3142(g) factors the Court considered at the time of detention or the § 3553(a) factors the Court considered at the time of sentencing have changed, therefore the Court should deny the defendant's motion for immediate release.

### D. Record of Rehabilitation is Not an Extraordinary and Compelling Reason

Finally, the defendant states in his motion a record of rehabilitation, and the Government does not dispute that the accomplishments the defendant has made in prison, as listed and documented in his motion, are laudable. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for a reduction of a term of imprisonment. (U.S.S.G. § 1B1.13 Commentary n.3; 28 U.S.C. § 944(t).)

### III. Home Confinement is Not Warranted

The defendant asks the Court to compassionately release him out of the custody of the BOP to "home confinement." The compassionate release provisions contemplate release, not necessarily "home confinement." However, if the Court were to interpret the defendant's request as a release to home confinement, the Court should decline the request because the authority to release a defendant to serve his sentence under home confinement rests with the BOP and not the Court. Title 18 U.S.C. §§3621(b) and 3624(c) impose upon the BOP a qualified obligation to facilitate a prisoners' transition from incarceration in a prison facility to a halfway house. (See *Elwood v. Jeter*, 386 F.3d 842, 844, 847 (8th Cir. 2004).) "There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006). In a case originating from the Western District

of Missouri, in a concurring opinion, Justice Bright opined that the Second Chance Act of 2007 marked "an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring) (citing Pub. L. No. 110-199, 122 Stat. 657 (Apr. 9, 2008).) The First Step Act further expanded the BOP's authority to place prisoners, providing more ways to reach rehabilitation goals, but it did not change a District Court's authority to place an inmate, and does not provide authority for the Court to order placement in a halfway house or order home confinement.

Here, because the defendant does not present an extraordinary and compelling reason that justifies a reduction of his sentence, the Court should not reconsider the terms of his sentence. Regardless of the Court's determination on compassionate release, the authority to determine the defendant's placement for the remainder of his sentence rests with the BOP.

## CONCLUSION

Based on the foregoing, the Government respectfully requests that the defendant's motion for compassionate release be denied.

    Respectfully submitted,

    TIMOTHY A. GARRISON
    United States Attorney

By    */s/ Randall D. Eggert*

    RANDALL D. EGGERT
    Assistant United States Attorney

    901 St. Louis, Suite 500
    Springfield, Missouri 65806
    Telephone: (417) 831-4406

    *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that a copy of the foregoing was delivered on September 17, 2020, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and defendant at:

        Alonzo F. Ellerman
        Reg. No. 15633-045
        Federal Prison Camp
        P.O. Box 1000
        Leavenworth, KS 66048

        */s/ Randall D. Eggert*
        Randall D. Eggert
        Assistant United States Attorney