# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:03-cr-03011-MDH |
| v. ) | Hon. Douglas Harpool |
| ) | |
| ALONZO F. ELLERMAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT ALONZO F. ELLERMAN'S
## RENEWED MOTION FOR COMPASSIONATE RELEASE

Defendant ALONZO F. ELLERMAN, by and through his attorneys, respectfully renews his motion for compassionate release, and requests the Court to reconsider its decision, issued October 2, 2020, to deny his *pro se* motion for compassionate release due to critical medical necessity, pursuant to 18 U.S.C. §3582(c)(1)(A)(i), (the "Motion"). (Crim. DCD 281).

Since this Court's ruling, there has been a severe outbreak of COVID-19 at Leavenworth USP, creating an extraordinary and compelling circumstance. Mr. Ellerman himself tested positive for COVID-19 on January 4, 2021 and reported a loss of taste and smell. Given his multiple comorbidities, he remains at risk of

suffering from severe and life-threatening consequences of the virus, even if he no longer tests positive.[1]

The compassionate release statute, as amended by the First Step Act, empowers courts to reduce a defendant's sentence when (1) a defendant has exhausted his administrative remedy with the United States Bureau of Prisons ("BOP") and (2) "extraordinary and compelling reasons" warrant a reduction, consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) and the Sentencing Commission's applicable policy statements. (18 U.S.C. § 3582(c)(1)(A)).

Mr. Ellerman originally moved for compassionate release on August 19, 2020 because he suffers from chronic medical conditions identified by the Centers for Disease Control and Prevention ("CDC") that elevate his risk of becoming critically ill from COVID-19, namely, asthma, hypertension, and neuropathy.[2] Mr. Ellerman argued that he qualified for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(ii) because his medical conditions and his efforts toward rehabilitation constitute extraordinary and compelling reasons under the Act, and his release is consistent with the Policy, to the extent it is applicable. (Crim. DCD 275).

The Court denied Mr. Ellerman's motion for compassionate release, finding that Mr. Ellerman "has not alleged facts that show extraordinary and compelling

---

[1] *See* Ctrs. for Disease Control and Prevention, *Long-Term Effects of COVID-19*, available at: https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html (last accessed Feb. 5, 2021).
[2] *See* Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Feb. 5, 2021).

reasons to warrant a reduction and that Defendant remains a danger to the community." (Crim. DCD 281).

Mr. Ellerman requests the Court reconsider its Order denying compassionate release based on the extraordinary and compelling reasons provided in his motion, as the Court's Order could not have taken into account Mr. Ellerman's COVID-19 diagnosis. Based on this significant new development, Mr. Ellerman respectfully asserts that he has now demonstrated an "extraordinary and compelling reason" for relief under the First Step Act, and makes a renewed motion for compassionate release. Mr. Ellerman also respectfully asserts that he is not currently a danger to the community.

**A.    The Court Should Reconsider its Denial of Compassionate Release**

Mr. Ellerman hereby makes a renewed motion for consideration for his request for compassionate release because the facts on which the Court based its decision, though accurate as of October 2, 2020, at the time of the decision, have significantly changed since then.

**B.    Active Cases Remain at Leavenworth**

Should Mr. Ellerman recover from his COVID-19 symptoms, his health will remain at severe risk in Leavenworth USP. Leavenworth USP currently has 138 active inmate cases and 5 active staff cases of COVID-19.[3] Two inmates have died from COVID-19. *Id.* To date, more than half of the inmates at Leavenworth USP

---

[3]    *See* Fed. Bureau of Prisons, *COVID-19 Coronavirus Update*, available at: https://www.bop.gov/coronavirus/ (last accessed Feb.19, 2021).

have tested positive for COVID-19. *Id.* This is a disastrous situation for Mr. Ellerman. The widespread, fatal impact of COVID-19 at Leavenworth USP is evidence the BOP has failed to protect the health of the inmates at Leavenworth USP, including the health of Mr. Ellerman. The COVID-19 outbreak at Leavenworth USP has rendered Mr. Ellerman's sentence far more severe than the Court originally intended when imposing it. While this is true for every inmate incarcerated during the COVID-19 pandemic, it is particularly applicable to Mr. Ellerman, who has now contracted COVID-19.

Given the outbreak at Leavenworth USP and Mr. Ellerman's own positive COVID-19 diagnosis, Mr. Ellerman respectfully renews his motion for compassionate release.

**C.  Mr. Ellerman's Medical Conditions Put Him at Greater Risk for Detrimental Long-Term Health Effects and Potential Death due to COVID-19**

Mr. Ellerman is a 59-year-old man who suffers from a number of serious medical conditions, including asthma, hypertension, and neuropathy. Mr. Ellerman's comorbidities make him susceptible to long-term harm and even death from COVID-19, particularly in light of the severe, lasting organ damage the disease can cause, especially to the heart and lungs.[4] Mr. Ellerman's numerous and chronic health conditions make COVID-19 a severe, ongoing, and existential threat.

---

[4] *See* Ctrs. for Disease Control & Prevention, *Long-Term Effects of COVID-19*, available at https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html, (last accessed Feb. 5, 2021).

According to an analysis by the CDC, "people with chronic conditions including diabetes, lung disease and heart disease appear to be at higher risk of severe illness from COVID-19."[5] The report revealed "78% of COVID-19 patients in the U.S. requiring admission to the intensive care unit had at least one underlying condition. And 94% of hospitalized patients who died had an underlying condition." *Id.* "Among COVID-19 patients admitted to the ICU, 32% had diabetes, 29% had heart disease and 21% had chronic lung disease, which includes asthma, COPD and emphysema. In addition, 37% had other chronic conditions including hypertension or a history of cancer." *Id.*

1. **Asthma**

Mr. Ellerman suffers from asthma, which puts him at greater risk of severe permanent harm from his COVID-19 diagnosis. The CDC has noted that "people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19" because "COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease."[6] *See, e.g., United States v. Common*, No. 17-CR-30067, 2020 WL 3412233, at *4 (C.D. Ill. June 22, 2020) (granting compassionate release where 39-year-old defendant

---

[5] Allison Aubrey, *Who's Sickest from COVID-19? These Conditions Tied to Increased Risk*, NPR, Mar. 31, 2020, https://www.npr.org/sections/coronavirus-live-updates/2020/03/31/824846243/whos-sickest-from-covid-19-these-conditions-tied-to-increased-risk, ("Aubrey, Who's Sickest from COVID-19?").

[6] *See* Ctrs. for Disease Control & Prevention, *COVID-19: People with Moderate to Severe Asthma*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html, (last accessed Feb. 5, 2021); *see also* David Levine, *Coronavirus and Asthma*, U.S. News & World Rep., Mar. 27, 2020, https://health.usnews.com/conditions/articles/coronavirus-and-asthma.

incarcerated at FCI Forrest City Low who had served approximately 2 years of a 10-year sentence suffered from chronic asthma, hypertension, and obesity).

2. **Hypertension**

*See, e.g., United States v. Robinson*, No. 10-cr-261, ECF No. 86 (July 17, 2020) (finding extraordinary and compelling reason based solely on defendant's hypertension); *United States v. Salvagno*, No. 5:02-cr-00051-LEK, ECF No. 1181 (N.D.N.Y. June 22, 2020) ("'What the scientific community knows with relative certainty is that hypertension is one of the most common 'comorbidities' in people who experience severe cases of COVID-19, a fact that has been apparent since the early days of the pandemic; indeed, must research identifies hypertension as the most common comorbidity."); *see also United States v. Pena*, No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension[.]"); *United States v. Soto*, No. 1:18-CR-10086-IT, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) ("Defendant's medical records show that he suffers from hypertension. This condition increases his risk for serious complications from contracting COVID-19, including death."); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at * 9 (S.D.N.Y. Apr. 20, 2020) (finding hypertension to be a comorbidity that increases the risk of death from COVID-19, and "reject[ing] the Government's contention that Mr. Scparta's general good health before the pandemic speaks to whether he should now be released."); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851 (E.D.N.Y, Apr. 10, 2020) (granting compassionate release to a defendant convicted of possession of child pornography who suffers from

hypertension). Notably, the Department of Justice found that "[d]efendants released through the compassionate release program are less than a tenth as likely to recidivate as the average federal prisoner." *U.S. v. Osorto*, 2020 WL 2323038, at *5 (N.D. Cal. May 11, 2020) (citing Dept. of Justice, Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program 49–50 (2013) ("Inspector General Report")). Moreover, it has estimated that "broader use of compassionate release could save taxpayers millions and free desperately needed space in BOP facilities." Id. (citing Inspector General Report at 45–48). --*United States v. Copeland*, 2020 WL 2547250, at *4 (E.D.N.Y. May 19, 2020).

### D. Health Risks to Mr. Ellerman Remain Even if His COVID-19 Case is No Longer Active

Mr. Ellerman tested positive for COVID-19 on January 4, 2021, and remains at risk of severe, permanent harm to his health, and even at risk of death, even if he is no longer exhibiting symptoms from COVID-19.

*See U.S. v. Armstrong*, No. 18-cr-5108, ECF No. 45 at 6 (S.D. Cal. July 30, 2020) (granting release to recovered inmate; noting that another inmate at Terminal Island "was hospitalized and died . . . after the BOP had shown him recovered" and court "finds it particularly persuasive that an inmate, being housed at the same facility as Mr. Armstrong, was hospitalized and died after he was pronounced 'recovered' by the BOP . . . [A]nnouncing that an inmate has 'recovered' does not mean that Mr. Armstrong is completely safe"); *U.S. v. Davis*, No. 06-cr-20020, ECF No. 337, at 8 (C.D. Ill. July 20, 2020) (granting sentence reduction for obese diabetic inmate who tested covid-positive where "the Court finds that there is a chance that Defendant

may contract COVID-19 again" and "the CDC recognizes that it is possible for an individual who had COVID-19 to become infected again by the virus"); *U.S. v. Carter*, No. 16-cr-156, ECF No. 48, at 1 (D.D.C. June 10, 2020) (granting sentence reduction for 76-year old sex offender having served 48-months of 80-month sentence and who had tested positive, was asymptomatic, "no other documented health issues," and noting inmate was at "heightened risk of developing serious complications should he be exposed again," and if released, inmate "will be able to more effectively avoid contracting COVID-19"); *United States v. Heyward*, No. 17-cr-527, ECF No. 83 at 2, 5 (D. Md. June 30, 2020) (releasing inmate with hepatitis C, hypertension, who tested positive and "has since recovered from the virus" and noting that government does not dispute that "secondary contraction of COVID-19 is possible"); *United States v. Moore*, No. 5:15-cr-00055-VAP, Doc. 46 ; (C.D. Cal. July 16, 2020) (tested positive on May 4; released from isolation on May 19 despite experiencing symptoms and not testing negative; in granting relief court (a) noted: "There is no evidence before the Court, however, to show Defendant developed antibodies and obtained immunity from reinfection" and (b) found: "Defendant has shown he is at high risk for developing severe symptoms from COVID-19, he is housed at a facility with an outbreak of the COVID-19 virus, and he has contracted the virus"); *United States v. Davis*, No. 2:15-cr-00062-TLN, 2020 WL 3443400 (E.D. Cal. Jun. 23, 2020) (tested positive May 26; in granting relief, court recognized "the possibility that Defendant may become infected again even if he fully recovers"—emphasis added—indicating that he was then suffering from the virus); *United States v. Lee*, No. 1:95-cr-00058-

LMB, Doc. 46 (E.D. Va. June 22, 2020) ("contracted coronavirus on May 23" and, while "largely asymptomatic," returned to unit after ten days with no scheduled follow-up care for three months; release ordered "after a 14-day quarantine"; "Although defendant has tested positive for the virus, which suggests that he may have developed some antibodies to protect him against future infection, this does not end the inquiry. Instead, the analysis shifts to the adequacy of the available medical treatment in defendant's facility.").

**E.   Mr. Ellerman is Not a Danger to the Community**

While Mr. Ellerman readily and remorsefully admits that his offense was serious, he does not now pose a danger to the community. Due to his widespread, chronic neck and back pain due to osteoarthritis, peripheral neuropathy, and cervical disc disorder he is unable to walk without limping. He was last seen by a radiologist in October 2020, where Mr. Ellerman was described as having "difficulty in sleeping due to pain" and "burning pain [in his] lower back."

Recognizing that the Court may find a continued need to protect the public, Mr. Ellerman respectfully requests that the Court grant his renewed motion for compassionate release. Any need to protect the public in this case does not justify Mr. Ellerman's continued incarceration in a facility experiencing an outbreak of COVID-19.

While incarcerated, Mr. Ellerman has completed his GED, and has taken twenty-one courses ranging from basic nutrition to fitness to crafts. Further, Mr. Ellerman has worked nearly continuously while incarcerated, in the commissary, as

a barber, in plumbing, and in the Leavenworth camp clothing room. Mr. Elllerman has also learned software engraving and graphic design work, which has been a productive, stimulating use of his time. Mr. Ellerman can put these skills to good use if his motion for compassionate release is granted, as outlined further below.

Mr. Ellerman is eager to reenter society, and during his time at Leavenworth has demonstrated a willingness to reform. Mr. Ellerman has served 17 years of his 25-year sentence and has had more than adequate time to reflect on his past, including his prior criminal activity.

Under similar circumstances, courts have found compassionate release to be warranted. *See, e.g. United States v. Brown*, 2:18-cr-00360-KOB-JEO, ECF No. 35 (N.D. Ala. May 22, 2020) (granting compassionate release of defendant convicted of use of a firearm in connection with drug trafficking); *United States v. Almontes*, No. 3:05-cr-58 (SRU), 2020 WL 1812713, at *1 (D. Conn. Apr. 9, 2020) (granting compassionate release of defendant with drug and Section 924(c) conviction, who had been deemed a "career offender" based on prior assault and robbery convictions); *United States v. Williams*, No. 3:04-cr-00095-MCR-CJK, ECF No. 91 (N.D. Fla. Apr. 1, 2020) (finding compassionate release appropriate for defendant convicted of armed bank robbery and brandishing a firearm during a crime of violence who had a prior criminal history including "six prior convictions for armed bank robbery and three prior convictions for bank robbery"); *United States v. Scott*, No. 7:98-cr-79-BO, ECF No. 317 (E.D.N.C. Feb. 4, 2020) (granting compassionate release of defendant serving a lengthy sentence for Hobbs Act robbery and multiple counts of using and carrying

a sawed-off shotgun and other firearms during and in relation to crimes of violence); *United States v. Mitchell*, No. 4:09-cr-00026-RH-CAS (N.D. Fla. Feb. 3, 2020) (granting compassionate release of defendant who pled guilty to possessing a firearm in furtherance of drug distribution offense and was sentenced as an armed career criminal); *United States v. Peterson*, No. 7:12-CR-15-IBO, ECF No. 63 (E.D.N.C. June 4, 2019) (granting compassionate release of defendant whose offenses included discharging a firearm in the furtherance of a drug trafficking offense); *United States v. DeWilliams*, No. 1:99-cr-120-REB (D. Colo. June 15, 2020); *See United States v. Armstrong*, No. 18-cr-5108, ECF No. 45 at 6 (S.D. Cal. July 30, 2020) (reducing the sentence in the case of an inmate convicted of possession of methamphetamine because "defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations, because their time in custody is harsher. Those with pre-existing conditions…are receiving particularly favorable recommendations. Many are receiving sentences around 24 months").

### F. Mr. Ellerman has a Solid, Supportive Family Network and Stable Home in Springfield, Missouri

If released, Mr. Ellerman's son and daughter in-law Johnnie and Elysha Ellerman would pick him up from Leavenworth USP with proper personal protective equipment. Mr. Ellerman would live with Johnnie and Elysha Ellerman in Sprignfield, Missouri. Johnnie Ellerman's home has a spare bedroom where Mr. Ellerman can stay indefinitely; Mr. Ellerman will not be or become a burden on his family or the community. Johnnie and Elysha Ellerman's adult children live in Springfield, and Mr. Ellerman's other son lives in Kansas City, Missouri. His

extended family will provide Mr. Ellerman with the support and care he needs to reintegrate into society.

Mr. Ellerman has not yet met his grandchildren. If Mr. Ellerman's request for compassionate release is denied, he may never be able to do so.

In Springfield, Mr. Ellerman would be surrounded by loving family who will help him rehabilitate and readjust to daily life, assist him in obtaining adequate ongoing medical care, and provide him with meaningful work. Johnnie and Elysha Ellerman own and operate Everlasting Paint & Body, an automotive repair and graphics shop in Springfield. The shop currently does some commercial and custom graphics design work for its customers and has considered expanding this offering. Johnnie and Elysha Ellerman plan to utilize Mr. Ellerman's engraving software skills to offer further graphic design services to their customers.

## Conclusion

For the foregoing reasons, as well as those set forth in his Motion for Compassionate Release, Mr. Ellerman respectfully requests that the Court grant his request for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i).

Respectfully Submitted,

By: /s/ Alexandra Cole
    Alexandra Cole
    Perkins Coie LLP
    131 South Dearborn Street
    Suite 1700
    Chicago, Illinois 60603
    D. +1.312.324.8686
    F. +1.312.324.9686

E. ACole@perkinscoie.com

 /s/ Sean D. O'Brien
Sean D. O'Brien, MoBar # 30116
Attorney at Law
4920 N. Askew
Kansas City, MO 64113
Telephone (816) 235-6152
E-mail: obriensd@umkc.edu

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the following document:

**DEFENDANT ALONZO ELLERMAN
RENEWED MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)**

was served on February 23, 2021, in accordance with Federal Rule of Criminal Procedure 49, Federal Rule of Civil Procedure 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

By: /s/ Sean D. O'Brien