# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | **No. 03-03011-CR-3-S-MDH** |
| **ALONZO F. ELLERMAN**, | |
| Defendant. | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION TO REDUCE SENTENCE PURSUANT 18 U.S.C. §3582(c)(1)(A)(i) – COMPASSIONATE RELEASE

The United States of America, through Teresa A. Moore, Acting United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to defendant Alonzo Ellerman's second motion for compassionate release. (D.E. 295.) The defendant seeks to have his 360-month sentence for conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and being a felon in possession of a firearm reduced to time served based upon extraordinary and compelling reasons. The defendant argues extraordinary and compelling reasons exist because the coronavirus (COVID-19) places him at risk if he remains in the custody of the Bureau of Prisons (BOP). (D.E. 295.)

This Court should deny the defendant's motion because he has not demonstrated extraordinary and compelling reasons justifying a reduction, and the factors set forth in 18 U.S.C. §§ 3553(a) and 3142(g) do not support a reduction. Consequently, the Government opposes the request and asks the Court to deny the defendant's motion.

## I. Procedural History

On January 23, 2003, a federal grand jury by indictment charged the defendant, with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) as well as with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (D.E. 1.) On November 5, 2003, the defendant was convicted after a three-day jury trial of both counts. (D.E. 155.) On March 5, 2004, the Court sentenced the defendant to 360 months on Count One, and 120 months on Count Two, with the sentences to be run concurrently. (D.E. 205.) Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant is 59 years old and is incarcerated at the Leavenworth-USP, with a projected release date of March 28, 2029. (*See* https://www.bop.gov/inmateloc/.)

On August 19, 2020, the defendant filed a motion for compassionate release asserting that the coronavirus (COVID-19) pandemic placed him at risk if he remained in custody due to his underlying medical conditions. (D.E. 275.) On September 17, 2020, the government filed its response, which opposed the defendant's release because he is a danger to the community, and he had not identified an "extraordinary and compelling" reason based on his health condition. (D.E. 279.) This Court denied the defendant's motion on October 2, 2020. (D.E. 281.)

The defendant has now filed a second request for compassionate release asserting that a recent COVID-19 outbreak at Leavenworth-USP in combination with his underlying medical conditions presents a significant change in circumstance. (D.E. 295.) He alleges that Leavenworth-USP has 138 active inmate coronavirus cases. However, the BOP's website indicates that on March 9, 2021, there is seven (7) active inmate coronavirus cases. (https://www.bop.gov/coronavirus/index.jsp).

## II. <u>BOP Response to the Coronavirus Pandemic</u>

The BOP has taken significant measures to protect the health of all inmates. The BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts at the Centers for Disease Control (CDC), and in accordance with guidance from the World Health Organization (WHO). The BOP has implemented preventive and mitigation measures including:

- **Modified Operations:** The BOP has implemented modified operations to maximize social distancing in all facilities. Inmates are limited in their movements to prevent congregate gathering. Essential inmate work details, such as Food Service, continue to operate with appropriate screening.

- **Screening of Inmates and Staff:** All newly-arriving BOP inmates are screened by medical staff for COVID-19. The screening includes a symptom screen, a temperature check, and an approved viral PCR test. Inmates who arrive symptomatic and/or test positive are placed in medical isolation. Inmates who arrive asymptomatic and test negative are placed in quarantine for at least 14 days, and are tested before entering general population. Enhanced health screening of staff, contractors, and other visitors is performed at all BOP locations.

- **Social Visits:** Until recently all social visits were suspended. In accordance with specific guidance designed to mitigate risks, the BOP is now reinstating social visits, where possible to maintain the safety of all staff, inmates, and visitors. All visits are non-contact and social distancing between inmates and visitors is enforced. Visitors are symptom screened and temperature checked, and inmates and visitors must wear appropriate face coverings, in addition to taking other hygiene precautions. Tours continue to be suspended.

- **Legal Visits:** Telephone calls and/or video conferencing with outside counsel is accommodated to the extent possible. In-person legal visits are accommodated upon request, based on local resources, and face coverings are required.

In addition, the BOP has begun administering vaccines to inmates and staff and is committed to doing so as quickly as possible. To date, 71,919 doses have been administered.

3

Further details regarding the BOP's COVID-19 action plan and efforts, and a daily updated resource page are available at: https://www.bop.gov/coronavirus/index.jsp.[1]

Taken together, these measures are designed to mitigate the risks of COVID-19 transmission in BOP institutions. BOP professionals continue to monitor this situation and adjust practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately, inmates have become ill, and there have been COVID-19 outbreaks at several institutions. Notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider a myriad of other factors, including the availability of transportation for inmates, and of supervision of inmates once released.

In addition, the Attorney General has directed that the BOP prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 based on CDC risk factors, and the BOP is devoting all available resources to executing that directive. On March 26, 2020, the Attorney General directed the Director of the BOP, upon considering the totality of the circumstances concerning *every* inmate, to prioritize the use of statutory authority to place prisoners in home confinement. Section 12003(b)(2) of the Coronavirus

---

[1]According to the resource page, due to the rapidly evolving nature of this public health crisis, the BOP will update the dashboard daily at 3:00 p.m. based on the most recently available data from across the agency as reported by the BOP's Office of Occupational Health and Safety.

4

Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons,[2] to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note.) To date, the BOP has placed more than 22,539 inmates on home confinement. *See* https://www.bop.gov/coronavirus/.

Even though the Government is requesting the Court deny the defendant's motion, the Government is sensitive to the issues the defendant raises related to the coronavirus pandemic. The Government does not minimize the concern or the risk to inmates such as the defendant. At the present time, the BOP has taken action to mitigate the danger for all inmates.

In this case, although the defendant expresses concern for his health related to the coronavirus pandemic, the defendant does not demonstrate he is in a category established by the CDC based on age or preexisting medical condition that places him in a high risk category that would establish an extraordinary or compelling reason for a sentence reduction. Further, after considering the applicable §§ 3553(a) and 3142(g) factors and determining that the defendant remains a danger to the community, as will be explained below, the Government objects to his release from custody.

### III. The Defendant has Not Identified Extraordinary and Compelling Reasons

To be entitled to compassionate release, the Court must find that the defendant has demonstrated that "extraordinary and compelling reasons warrant such a reduction," that "such a

---

[2] On April 3, 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion.

reduction is consistent with applicable policy statements issued by the Sentencing Commission," and only "after considering the factors set forth in section 3553(a)." 18 U.S.C. 3582(c)(1)(A)(i). In *United States v. Jones,* the Sixth Circuit provided a three-step test a district court should follow when reviewing motions for compassionate release. 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020). "At step one, a court must find whether extraordinary and compelling reasons warrant a sentence reduction.  At step two, a court must find whether such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission … At step three, § 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id* (internal quotations and citations omitted).

The Sentencing Commission's pertinent policy statement related to extraordinary or compelling reasons appears at U.S.S.G. § 1B1.13. As amended November 1, 2018, the statement repeats the text of 18 U.S.C. § 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  Because the Eighth Circuit has not yet decided the applicability of § 1B1.13 as it relates to motions brought directly by inmates, the Government argues that it should still be considered.  The BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. Courts have frequently upheld the BOP's discretionary authority in its management duties over federal prisoners. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs].").

6

The CDC has identified two separate categories of medical risk factors affecting the likelihood of severe outcomes from COVID-19.  First, the CDC established a list of conditions that, according to current data, definitively entail a greater risk of severe illness. In this case, the defendant does not have a medical condition that the CDC has identified as a risk factor for a severe outcome from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

The second CDC list of risk factors identifies conditions that "might" have an increased risk of severe illness from COVID-19. This includes the defendant's diagnoses of asthma and hypertension.  With respect to this second list, the CDC advises "COVID-19 is a new disease. Currently there is limited data and information about the impact of underlying medical conditions and whether they increase the risk for severe illness from COVID-19." Although the defendant asserts that he suffers from two of the conditions on this second CDC list, the Government argues that conditions on the second list do not present an extraordinary and compelling reason for release. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

The defendant alleges that he has previously contracted COVID-19. (D.E. 295.)  The defendant's medical records confirm and show that he was asymptomatic.  At present, the scientific community is aware of reports indicating that persons who were previously diagnosed with COVID-19 can be re-infected. (See https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html.) However, the immune response, including duration of immunity is not yet understood. In the face of scientific uncertainty concerning the likelihood of the defendant's potential reinfection, and the defendant's demonstrated capacity to overcome infection and provide self-care within the correctional setting, the Government respectfully contends that the defendant's

7

request for compassionate release does not articulate either an extraordinary or compelling reason for such release.

As previously discussed, the Eighth Circuit has not yet decided whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate. Nonetheless, the Application Notes for § 1B1.13 are instructive and provide guidance for the Court when determining whether the defendant has demonstrated an extraordinary and compelling reason for a sentencing reduction. *See United States v. Gunn,* 2020 WL 6813995, at *1-2 (7th Cir. Nov. 20, 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive."); *United States v. Pelichet,* 2020 WL 6825699, at *5 (D.S.D. Nov. 20, 2020) ("With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance." (*citing Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release)); *United States v. Gashe,* 2020 WL 6276140 at *3 (N. D. Iowa Oct. 26, 2020) ("I agree with those courts that have found that although [§ 1B1.13] provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.")

The application notes for U.S.S.G. 1B1.13 define medical condition of the defendant as:

Medical Condition of the Defendant.--

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include

8

metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(U.S.S.G. § 1B1.13 Application Note 1(A).)

The defendant has made an inadequate showing of extraordinary and compelling circumstances. There is no evidence or claim that he is unable to provide self-care or perform daily living activities. The defendant does not have a terminal illness nor suffers from any physical or mental condition that substantially diminishes his ability to provide self-care within the correctional facility. Further, although the defendant asserts he suffers from asthma, hypertension, and neuropathy, these conditions are not identified by the CDC as a medical condition that places the defendant at an increased risk for severe illness from COVID-19.

The second circumstance set forth in U.S.S.G. § 1B1.13 application note is age of the defendant; however, the defendant must be at least 65 years old to qualify, and the defendant is only 59 years old. (U.S.S.G. § 1B1.13 Application Note 1(B).) The third, family circumstances, is applicable where there is "the death or incapacitation of the caregiver of the defendant's minor child or minor children," or "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."

9

(U.S.S.G. § 1B1.13 Application Note 1(C).) The defendant's children are adults living on their own. (D.E. 295 at 11.)

The final circumstance is "Other Reasons." The application notes for U.S.S.G. 1B1.13 define other reasons as "determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." (U.S.S.G. § 1B1.13 Application Note 1(D).) The defendant presents his medical issues in combination with a COVID-19 outbreak at Leavenworth-USP as an extraordinary and compelling reason unique to his situation. (D.E. 294.) He claims that Leavenworth-USP has 138 active inmate cases; however, the BOP's COVID-19 website does not confirm this claim. As of March 9, 2021, Leavenworth-USP has seven (7) inmates active with the coronavirus. (*See* https://www.bop.gov/coronavirus/index.jsp). Further, as the defendant points out, he has already contracted and recovered from the COVID-19 virus. It is then a fair assessment to conclude that the BOP's medical efforts saved this defendant's health, as he suffered no complications under BOP's care, and there is no showing that BOP has failed to manage his ongoing medical needs. The defendant was monitored throughout and was reported as asymptomatic.[3] The defendant has made an inadequate showing of extraordinary and compelling circumstances.

While the Government is attune to the difficulties facing inmates, this particular instance simply fails to meet the requirements of the law and policy. 18 U.S.C. § 3582(c) does not allow a court to modify a term of imprisonment absent extraordinary and compelling reasons that warrant

---

[3]The defendant's medical records will be provided upon request.

such a reduction. The circumstances here do not rise to such a standard, and the defendant's request does not meet the requirements for release.

Finally, the defendant's motion does not address the measures that the BOP is undertaking to prevent the spread of the virus, including vaccination measures. Although our nation is in the midst of a national crisis requiring extraordinary measures, § 3582 contemplates compassionate release, not the widespread release of inmates serving lawfully-imposed sentences. The defendant is receiving adequate medical care inside the BOP, and upon consideration of the factors outlined in 18 U.S.C. §§ 3142 and 3553(a), this defendant should not be granted early release.

**IV. Defendant Remains a Danger to the Community and Section 3553(a) Factors Do Not Support Release**

This Court may not modify or reduce the defendant's sentence without considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from future crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[4] 18 U.S.C. § 3582(c); *see also United States v. Jones*, 2020 WL 6817488, at *11 (6th Cir. Nov. 20, 2020) (citing *Gall v. United States*, 552 U.S. 38 (2007) ("District courts should consider all relevant § 3553(a) factors before rendering a compassionate

---

[4]U.S.S.G. § 1B1.13(2), states that even if a prisoner demonstrates "extraordinary and compelling reasons," he is not entitled to compassionate release if he poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As discussed above, Courts are divided as to whether § 1B1.13 applies outside the context of a motion filed by the BOP. However, § 3582 unquestionably requires the Court to consider the § 3553(a) factors, which encompasses the arguments the Government has raised with regard to the defendant's presentation of a danger to the community and the need to protect the public.

11

release decision."). Consideration of these factors, which are not affected by COVID-19, does not allow the Court to grant the defendant's motion for compassionate release.

Upon considering the factors set forth in § 3553(a), and the relevant policy statement, a reduction in the defendant's sentence is not warranted and the defendant's motion should be denied. The § 3553(a) actors Include:

(1) nature and circumstances of the offense and the history and characteristics of the defendant. § 3553(a)(1).

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; *to protect the public from further crimes of the defendant*; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(A)-(D) (emphasis added).

(3) the kinds of sentences available. § 3553(a)(3).

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress; and that except as provided in section 3742(g), are in effect on the date the defendant is sentenced § 3553(a)(4)(A).

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress; and that except as provided in section 3742(g), are in effect on the date the defendant is sentenced § 3553 (a)(5).

12

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct § 3553(a)(6).

(7) the need to provide restitution to any victims of the offense § 3553(a)(7).

Further, U.S.S.G. § 1B1.13 directs Courts to also consider the factors outlined in 18 U.S.C. § 3142(g) in order to determine whether the defendant remains a danger to the community. Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors— which are not affected by COVID-19—does not allow this Court to conclude that this defendant is not a danger to the safety of any other person or the community.

This defendant was involved in a large-scale conspiracy involving the distribution of methamphetamine. The defendant was responsible for distributing at least 5 kilograms, but less than 15 kilograms of methamphetamine. (PSR ¶ 69.) During a search of the defendant's residence, officers also located seven firearms. (PSR ¶ 70.)

The defendant's history and characteristics also demonstrate that the defendant is a danger to the community. The defendant's criminal history involves drugs and violence with prior convictions for burglary, stealing, second-degree assault by shooting another and causing serious physical injury, second-degree burglary, possession of drug paraphernalia, and possession of methamphetamine. (PSR ¶¶ 80-83.) The defendant began his life of crime at the age of 17, and

13

even after spending time in the Missouri Department of Corrections, the defendant continued to commit crimes at ages 39, 40, and 42.

Nothing about the COVID-19 pandemic reduces the defendant's danger to others nor minimizes other § 3553(a) factors. This defendant has led a criminal lifestyle, is a danger to the community and there is no indication he will choose another path when released. The circumstances of this defendant's actions in the distribution of large amounts of methamphetamine while possessing multiple firearms reflects a serious danger and degrades the quality of life within the community.

The defendant has failed to demonstrate that the 18 U.S.C. § 3553(a) factors the Court considered at the time of sentencing have changed, nor that he is no longer a danger to the community, therefore the Court should deny the defendant's motion for release.

## CONCLUSION

Based on the foregoing, the Government respectfully requests that the defendant's second motion for compassionate release be denied.

Respectfully submitted this 9th day of March 2021.

Teresa A. Moore
Acting United States Attorney

By    */s/ Randall D. Eggert*

Randall D. Eggert
Assistant United States Attorney
901 St. Louis, Suite 500
Springfield, Missouri 65806
Telephone: (417) 831-4406

*Attorneys for Respondent*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing was delivered on March 9, 2021, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and defendant at:

          Alonzo F. Ellerman
          Reg. No. 15633-045
          Federal Prison Camp
          P.O. Box 1000
          Leavenworth, KS
          66048

                                */s/ Randall D. Eggert*
                                Randall D. Eggert
                                Assistant United States Attorney