# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:03-cr-03011-MDH |
| v. | ) | Hon. Douglas Harpool |
| | ) | |
| ALONZO F. ELLERMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT ALONZO F. ELLERMAN'S REPLY IN SUPPORT OF RENEWED MOTION FOR COMPASSIONATE RELEASE

Defendant ALONZO F. ELLERMAN, by and through his attorneys, respectfully provides the following suggestions in support of his second motion for compassionate release. Mr. Ellerman maintains that this Court should grant his motion for release because of extraordinary and compelling circumstances, in particular the COVID-19 outbreak at USP Leavenworth ("Leavenworth" or the "Prison") and Mr. Ellerman's own diagnosis of COVID-19, which warrants a reduction of his sentence. Mr. Ellerman also respectfully asserts that he is not currently a danger to the community.

**I. The Coronavirus Outbreak at Leavenworth USP, along with Mr. Ellerman's COVID-19 Diagnosis and Underlying Medical Conditions, Are Extraordinary and Compelling Reasons for Compassionate Release**

The United States of America ("Plaintiff") has asserted that Mr. Ellerman has a "demonstrated capacity to overcome infection and provide self-care" following his

COVID-19 diagnosis. While Mr. Ellerman acknowledges that his symptoms from COVID-19 were not so severe as to warrant hospitalization, he experienced novel shortness of breath around the time of his diagnosis, and continues to experience after-effects of his infection, including difficulty sleeping.

### A. The Bureau of Prisons Response Has Been Inadequate

Mr. Ellerman acknowledges certain precautions were taken at Leavenworth by the Bureau of Prisons ("BOP") prior to and following the outbreak of COVID-19 at the Prison. However, these measures were inadequate to prevent Mr. Ellerman from contracting COVID-19, for which he tested positive on January 4, 2021. The high volume of cases of COVID-19 at Leavenworth has limited the availability of adequate medical attention to Mr. Ellerman's numerous pre-existing medical conditions, which include neuropathy, chronic pain, asthma, hypertension, and muscle cramps.

The Acting United States Attorney's assertion that there have been "COVID-19 outbreaks at several institutions" grossly understates the situation at Leavenworth: of the 1,514 inmates at Leavenworth and its associated camp, 874 have contracted COVID-19, and 11 inmates and five staff members have active infections.[1] This rate of contagion, at 58%, is significantly higher than the rate among the general population, just 8%.[2] Brie Williams, a professor of medicine at the University of California San Francisco, has noted "it would be clear to any health care professionals

---

[1] *See* Fed. Bureau of Prisons, *COVID-19 Coronavirus Update*, available at: https://www.bop.gov/coronavirus/ (last accessed Mar. 20, 2021).
[2] *See* COVID Data Tracker, available at: https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days.

who visited, that correctional facilities are the perfect breeding grounds for explosive COVID-19 outbreaks."[3] The National Academy of Sciences has published a report recommending "decarceration—the practice of diverting people from incarceration … [which] facilitates physical distancing and other mitigation strategies, reducing the risks of transmission of the virus within correctional facilities."[4] The report also noted that "research on recidivism and reentry suggests that correctional authorities can decarcerate in a manner that would minimize risks to public safety. Appropriate planning for reentry—including consideration of families and community supports for housing, health care, and income—are important complements to decarceration efforts." *Id.*

**B.     Mr. Ellerman Remains at Risk for Long-Term Effects of COVID-19**

While Mr. Ellerman's positive diagnosis for COVID-19 occurred in January, his health remains at significant risk due to lingering effects of COVID-19 and the risk of reinfection, particularly as new variants of the disease spread throughout the United States, each of which are exacerbated by his pre-existing medical conditions, as well as the close quarters at the Prison. As set forth in Mr. Ellerman's renewed motion for compassionate release, numerous federal inmates have 'recovered' from COVID-19, only to become reinfected, and some have even died as a result. As recently as March 3, 2021, the BOP publicized the death of an inmate at the Federal Correctional Institution in Seagoville, Texas, who tested positive for COVID-19 on

---

[3] https://www.ucsf.edu/news/2020/10/418876/prisoners-pandemic-hits-greater-force
[4] *See* Decarcerating Correctional Facilities During COVID-19: Advancing Health, Equity, and Safety, available at https://www.nap.edu/resource/25945/interactive/.

140453-0001/151818697.3
Case 6:03-cr-03011-MDH   Document 299   Filed 03/22/21   Page 3 of 10

January 26, 2020, did not present symptoms as of July 29, 2020, and fell ill on February 17, 2021.[5] This inmate, Johnathan Delargy, passed away merely ten days later on February 27, 2021 at a local hospital. *Id*.

Mr. Ellerman remains at risk of severe, permanent damage to his health, and even at risk of death. As of March 9, 2021, Mr. Ellerman continues to feel the physical impact of COVID-19, including muscle cramps which have made it difficult for him to sleep. Mr. Ellerman contests the Government's assertion that his underlying medical conditions, including asthma, hypertension, and neuropathy, have not been recognized as conditions that place him at increased risk for severe illness from COVD-19. Indeed, courts have recognized hypertension alone as a sufficient extraordinary and compelling circumstance to warrant compassionate release. *United States v. Sanders*, 2021 U.S. Dist. LEXIS 1241 at *8-9 (E.D. Cal. Jan. 5, 2021).

While reinfection reports have been infrequent, the Center for Disease Control reports that the probability of reinfection "is expected to increase with time after recovery from initial infection because of waning immunity and the possibility of exposure to virus variants."[6] Further, the Centers for Disease Control and Prevention ("CDC") notes that "continued widespread transmission makes it more likely that reinfections will occur." *Id*. While active cases of COVID-19 have persisted

---

[5] *See* Inmate Death at FCI Seagoville, available at
https://www.bop.gov/resources/news/pdfs/20210303_press_release_sea.pdf.
[6] *See* Interim Guidance on Duration of Isolation and Precautions or Adults with COVID-19, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html.

140453-0001/151818697.3
Case 6:03-cr-03011-MDH   Document 299   Filed 03/22/21   Page 4 of 10

at Leavenworth for the past months due to the BOP's inadequate response to the outbreak, Mr. Ellerman's long-term health remains at grave risk.

The BOP is in the process of rolling out vaccinations, including at Leavenworth. Mr. Ellerman has received his first dose of the vaccine, but even after he is fully vaccinated, the vaccine will not fully protect Mr. Ellerman from reinfection, nor will it fully ameliorate the potential long-term effects from his prior infection. The CDC recommends continued social distancing among vaccinated individuals, which the BOP has demonstrated an inability to accomplish at Leavenworth, where active cases of COVID-19 persist despite the facility's attempts to mitigate the spread. Further, the CDC is wary that the new variants of COVID-19 may spread more quickly and evade vaccine-induced immunity.[7]

The demonstrated inability of the BOP to protect Mr. Ellerman from contracting COVID-19, along with the ongoing severe risk posed to him if reinfected, together with his serious underlying medical conditions which make him more susceptible to severe effects of COVID-19, constitute extraordinary and compelling circumstances warranting compassionate release.

### II. Mr. Ellerman is Not a Danger to the Community

Mr. Ellerman acknowledges that the factors in determining whether a defendant is a danger to the community as set forth in 18 U.S.C. § 3553(a) are

---

[7] *See* Science Brief: Emerging SARS-CoV-2 Variants, available at https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/scientific-brief-emerging-variants.html.

unaffected by COVID-19. The factors are: (1) the nature and circumstances of the offense, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Mr. Ellerman does not contest (1) the nature and circumstances of his offense or (2) the weight of evidence against him. During his seventeen (17) years of incarceration, Mr. Ellerman has demonstrated outstanding character and commitment to rehabilitation, each of which indicate he would not be a danger if released. The Government inaccurately asserted in its response that Mr. Ellerman continued to commit crimes at ages 39, 40, and 42. Mr. Ellerman's current sentence was imposed for a crime committed when Mr. Ellerman was 40 years old, and he was incarcerated by the time he was 42 years old. Over the course of the ensuing nearly two decades in prison, Mr. Ellerman has obtained his GED, consistently remained employed, as his health has permitted, and has completed numerous educational courses.

This Court has found that a defendant who "maintained employment, committed no acts of violence, and completed numerous education courses" while incarcerated demonstrated a sufficient commitment to rehabilitation to warrant compassionate release despite the violent nature of the defendant's crime. *United States v. Bell*, No. 16-00003-01-CR-W-SRB, 2020 WL 7647554 at *3 (W. D. Mo., Dec. 23, 2020). The defendant in this case was convicted of possession with intent to distribute cocaine and possession of firearms in furtherance of a drug trafficking crime. Both the nature of his crime and conduct in prison mirror the facts of Mr.

Ellerman's case. This Court concluded that its decision to grant compassionate release aligned with other district courts which granted compassionate release to defendants who were found guilty of similar drug-related crimes. ("See e.g., *Loyd v. United States*, No. 15-20394-1, 2020 WL 2572275, at *5 (E.D. Mich. May 21, 2020) (granting compassionate release to defendant who served less than four years of a ten-year sentence for conspiracy to possess with intent to distribute controlled substances) ("[Defendant's] crimes are serious, but the quality of his time in prison has shown tremendous growth in his ability to positively impact his family and community. Finally, [Defendant's] growth and medical condition outweigh any marginal benefit he would receive from finishing his sentence in prison." ); *United States v. Brown*, 457 F. Supp. 3d 691, 704 (S.D. Iowa 2020) (granting compassionate release to defendant who served less than fifteen years of a forty-two-year sentence for conspiracy to distribute methamphetamine, methamphetamine possession with intent to distribute, and two counts of possessing a firearm in furtherance of a drug-trafficking crime) ("[G]iven Defendant's spotless prison disciplinary record, incarceration is unnecessary 'to protect the public from further crimes of the defendant.' § 3553(a)(2)(C). Meanwhile, given Defendant's exhaustive use of prison programming, the only thing left 'to provide the defendant with needed educational or vocational training' is to pursue an actual vocation. § 3553(a)(2)(D).""). Like the defendant in *United States v. Bell*, Mr. Ellerman has no history of violence or

disciplinary actions during the course of his seventeen-year incarceration. He is now 59 years old, which itself indicates he is unlikely to pose a danger to society.[8]

Apart from and prior to his COVID-19 diagnosis, Mr. Ellerman has suffered widespread, chronic neck and back pain. As recently as March 2, 2021, Mr. Ellerman received a transforaminal epidural injection to his lower back in order to reduce the inflammation that contributes to his chronic pain. Mr. Ellerman also requires "high doses" of gabapentin, a prescription-strength pain killer. Despite the treatment Mr. Ellerman has received from the BOP, he lives in constant, debilitating pain. Mr. Ellerman's physical condition, in addition to his demonstrably reformed character, render him a non-threat to society. He is eager to return to his family and will be employed at his son's automotive shop utilizing his software engraving skills. Mr. Ellerman's family is able and ready to provide him with the financial, housing, transportation, and general support necessary to facilitate a smooth reentry into society.

In his own words, Mr. Ellerman writes: "I … was a Firefighter in the late 80s and early 90s. I was Firefighter of the Year; I went from a rookie Firefighter to Captain of my own station for 6 Years … in the late 90s I took a wrong turn and got on drugs, divorced my wife, it went down hill [*sic*], after that. It's been as [*sic*] long time since I was out there, all I want is to be home with my Family, I just hope the

---

[8] *See generally*, The Effects of Aging on Recidivism Among Federal Offenders, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

judge will understand. I've lost my Mom and my sister and 2 brothers I want to see my Kids before something happens to me. I Pray and beg the courts to please under stand [*sic*] … thank you so much for seeing in me that something is in here in me that I will do right when I get out" (punctuation added).[9]

## Conclusion

For the foregoing reasons, as well as those set forth in his Renewed Motion for Compassionate Release, Mr. Ellerman respectfully requests that the Court grant his request for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i).

Respectfully Submitted,

By: /s/ Alexandra Cole
Alexandra Cole
Perkins Coie LLP
131 South Dearborn Street
Suite 1700
Chicago, Illinois 60603
D. +1.312.324.8686
F. +1.312.324.9686
E. ACole@perkinscoie.com

/s/ Sean D. O'Brien
Sean D. O'Brien, MoBar # 30116
Attorney at Law
4920 N. Askew
Kansas City, MO 64113
Telephone (816) 235-6152
E-mail: obriensd@umkc.edu

---

[9] Email from defendant to Perkins Coie LLP.

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the following document:

**DEFENDANT ALONZO ELLERMAN'S REPLY IN SUPPORT OF RENEWED MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)**

was served on March 22, 2021, in accordance with Federal Rule of Criminal Procedure 49, Federal Rule of Civil Procedure 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

By: /s/ Alexandra Cole